Tess M. QUESENBERRY and Henry Quesenberry, her husband, Plaintiffs-Appellants-Petitioners,

v.

MILWAUKEE COUNTY, a municipal corporation, Defendant-Respondent.

Supreme Court

*No. 80–1515. Argued March 2, 1982.—Decided March 30, 1982.*

(Also reported in 317 N.W.2d 468.)

For the plaintiffs-petitioners there was a brief (in court of appeals) by *Joseph W. Weigel* and *Weigel Law Firm* of Milwaukee, and oral argument by *Joseph W. Weigel*.

For the defendant-respondent there was a brief (in court of appeals) and oral argument by *James J. Bonifas*, deputy corporation counsel.

DAY, J. This is a review of a court of appeals decision which affirmed an order of the circuit court for Milwaukee county, Hon. Leander J. Foley, Jr., Judge, dismissing the complaint of plaintiffs-appellants-petitioners, Tess M. Quesenberry and Henry Quesenberry (hereinafter plaintiffs) against defendant-respondent, Milwaukee county (hereinafter the county) for injuries received on a golf course on the ground that the complaint failed to state a claim upon which relief could be granted.

The principal issue presented is whether sec. 29.68, Stats. 1977,[1] barring recovery for injuries received

[1] "29.68 **Liability of landowners.** (1) SAFE FOR ENTRY: NO WARNING. An owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, camping, hiking, snowmobiling, berry picking, water sports, sight-seeing, cutting or removing wood, climbing of observation towers or recreational purposes, or to give warning of any unsafe condition or use of structure or activity on the premises to persons entering for such purpose, except as provided in sub. (3).

"(2) PERMISSION. An owner, lessee or occupant of premises who gives permission to another to hunt, fish, trap, camp, hike, snowmobile, sightsee, berry pick, cut or remove wood, climb observation towers or to proceed with water sports or recreational uses upon such premises does not thereby extend any assurance that the premises are safe for such purpose, or constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted, except as provided in sub. (3).

"(2m) No LIABILITY. No public owner is liable for injury or death resulting from the use of natural features, natural conditions or attack by wild animals.

"(3) LIABILITY. This section does not limit the liability which would otherwise exist:

"(a) For wilful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity.

"(b) For injury suffered in any case where permission to hunt, fish, trap, camp, hike, snowmobile, sightsee, berry pick, cut or

while engaging in recreational activities on lands of another, bars plaintiffs' suit against Milwaukee county

remove wood, climb observation towers or to proceed with water sports or recreational uses was granted for a valuable consideration other than the valuable consideration paid to the state or to a landowner by the state.

"(c) For injury caused by acts or persons to whom permission to hunt, fish, trap, camp, hike, snowmobile, sightsee, berry pick, cut or remove wood, climb observation towers or to proceed with water sports or recreational uses was granted, to other persons as to whom the person granting the permission, or the owner, lessee or occupant of the premises, owed a duty to keep the premises safe or to warn of danger.

"(4) INJURY TO PERSON OR PROPERTY. Nothing in this section creates a duty of care or ground of liability for injury to person or property.

"(5) DEFINITIONS. In this section:

"(a) 'Premises' includes lands, private ways and any buildings, structures and improvements thereon.

"(b) 'Owner' means any private citizen, a municipality as defined under s. 144.01(12), the state, or the federal government, and for purposes of liability under s. 895.46, any employe or agent of the foregoing.

"(c) 'Valuable consideration' does not include contributions to the sound management and husbandry of natural and agricultural resources of the state resulting directly from recreational activity, payments to landowners either in money or in kind, if the total payments do not have an aggregate value in excess of $150. annually, or those entrance fees paid to the state, its agencies or departments, municipalities as defined in s. 144.01(12) or the U.S. government.

"(d) 'Natural features' include but are not limited to undesignated paths, trails and walkways and the waters of the state as defined under s. 144.01(1).

"(e) 'Public owner' means a municipality as defined under s. 144.01(12), the state, any agency of the state and for purposes of liability under s. 895.46, any employe or agent of the foregoing."

Municipality is defined by Sec. 144.01(12), Stats., 1977):

"144.01 Definitions. Except as the context requires otherwise, the following terms as used in this chapter mean: . . .

"(12) 'Municipality,' any city, town, village, county, county utility district, town sanitary district, public inland lake protection and rehabilitation district or metropolitan sewage district."

for damages suffered when Tess Quesenberry was injured on a golf course owned and operated by the county. We conclude that it does not. The second issue is whether the "safe place" statute, sec. 101.11, Stats. 1977,[2] applies. We conclude the record is insufficient at this stage of the proceedings to make that determination.

The complaint alleged that on June 4, 1978, plaintiffs, "for valuable consideration," were playing golf at the George Hansen Golf Course in George Hansen Park which is part of the Milwaukee county park system. While walking in the area of the fifth fairway, plaintiff, Tess Quesenberry, stepped into an eighteen-inch diameter hole created by a drainage tile. The complaint alleged that the hole was covered with grass, "not readily apparent or easily visible," and there were no bar-

[2] "101.11 **Employer's duty to furnish safe employment and place.** (1) Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

"(2) No employer shall require, permit or suffer any employe to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no such employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employes and frequenters; and no employer or owner, or other person shall hereafter construct or occupy or maintain any place of employment, or public building, that is not safe, nor prepare plans which shall fail to provide for making the same safe."

riers around the hole nor signs warning of "its hazardous nature." As a result of the fall, Tess Quesenberry suffered a broken leg and other injuries.

Defendants brought a motion to dismiss for failure to state a claim upon which relief could be granted. After reviewing the briefs and oral arguments of each party, the trial court dismissed the action on the ground that sec. 29.68, Stats., as interpreted by this court in *Wirth v. Ehly,* 93 Wis. 2d 433, 287 N.W.2d 140 (1980), barred the suit against the county. Plaintiffs appealed to the court of appeals which upheld the trial court. Plaintiffs petitioned this court to review the court of appeals' decision. We granted that petition.

This case is before us on a dismissal of the complaint for failure to state a claim upon which relief can be granted, pursuant to sec. 802.06(2)(f), Stats. 1979–80. For purposes of determining whether a claim for relief has been stated, the facts pleaded in the complaint must be accepted as true. *Kranzush v. Badger State Mut. Cas. Co.,* 103 Wis. 2d 56, 57, 307 N.W.2d 256 (1981). A complaint should be dismissed as legally insufficient only if it is "quite clear" that under no conditions can the plaintiff recover. *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 731–32, 275 N.W.2d 660 (1979). We will affirm an order dismissing a complaint for failure to state a claim only if, upon a review of the allegations contained therein, it appears to a certainty that no relief can be granted under any set of facts which plaintiffs could prove in support of them.

Sec. 29.68, Stats., limits a landowner's liability for injuries suffered by a person using land for specific types of recreational activity, subject to certain exceptions. One such exception, contained in sec. 29.68(3)(b), states that liability is not limited if the person using

the land gave valuable consideration for that use. Valuable consideration is defined by sec. 29.68(5)(c) as not including payments to landowners of an aggregate value of less than $150, or "entrance fees" paid to governmental entities, including counties. The trial court and court of appeals held that sec. 29.68 precluded the cause of action, and that the "valuable consideration" exception did not provide a basis for liability.

Plaintiffs' complaint alleged that they paid "valuable consideration" to golf. Giving the complaint a liberal construction, we conclude that the complaint does state a cause of action against the county which is not barred by sec. 29.68, Stats. The trial court did not discuss the sec. 29.68(3)(b) "valuable consideration" exception to the limitation of liability. The court of appeals recognized the valuable consideration exception, but held that it did not apply where the consideration was in the form of an "entrance fee," and apparently concluded that the "valuable consideration" alleged by plaintiff was an "entrance fee." Whether the "entrance fee" for entering the type of lands upon which the kinds of recreational activities described in the statute are carried out is the equivalent of the charge made to play golf cannot be determined from this record.

Even if the county had received no valuable consideration for the use of the golf course, we conclude that it still could not claim the benefit of sec. 29.68, Stats., to limit its liability. We interpret sec. 29.68 to pertain to the types of recreational uses of land specified in the statute and find that golf courses do not come within the scope of the statute.

Sec. 29.68, Stats., protects the owner of premises used by others for "hunting, fishing, trapping, camping, hiking, snowmobiling, berry picking, water sports, sight-

seeing, cutting or removing wood, climbing of observation towers or recreational purposes." "Recreational purposes" covers an almost limitless number of activities that could be so described. But the statute clearly limits the type of recreational activities meant to be covered. Golfing is not one of the enumerated uses, or types of use, described and therefore is not within the exceptions to owner liability described by the general term "recreational purposes." This conclusion is supported by the legislative history of sec. 29.68, and canons of statutory construction.

Sec. 29.68, Stats., was enacted into law as ch. 89, Laws of 1963. As originally drafted, the statute protected owners of land used by others for "hunting, fishing, trapping, camping, hiking, berry picking, water sports, sightseeing or recreational purposes." In *Copeland v. Larson*, 46 Wis. 2d 337, 343–44, 174 N.W.2d 745 (1970), this court reviewed the legislative history of sec 29.68 and found that the statute was passed in order to protect private landowners from liability for injuries suffered by persons hunting on their land.[3] Snowmobiling was added to the protected activities by ch. 394, sec. 7, Laws of 1969. Cutting and removing wood, and climbing of observation towers were added to the list of activities covered by the statute by chs. 75, and 418, sec. 258m, Laws of 1977. The statutory changes which added snowmobiling, wood cutting and observation tower climbing to the activities for which landowners are protected are inconsistent with reading "recreational purposes" to cover premises used for any sort of recreation. Under such a broad reading, the amendments would have been superfluous, as those activities would have been covered under "recreational uses or purposes" (with the excep-

---

[3] *See also*, Note, *Torts-Statutes-Liability of Landowners to Persons Entering for Recreational Purposes*, 1964 Wis. L. Rev., 705, 709.

tion of wood cutting which could be done for other than recreational purposes).

Restricting the scope of the statute to recreational use of land for the type of activities enumerated is consistent with the rule of statutory construction, *ejusdem generis, i.e.*, where a general word follows an enumeration of more specific words, the general word is limited to objects of the same nature as the specific words preceding it. 2A Sands, *Sutherland Statutory Construction*, sec. 47.-17 (4th ed. 1973). *Watkins v. Milwaukee County Civil Service Comm.*, 88 Wis. 2d 411, 417, 276 N.W.2d 775 (1979). Applying this rule, the general term "recreational purposes" should be limited to activities similar to the preceding enumerated words. We conclude that the common feature of the enumerated words is that they are the type of activity that one associates being done on land in its natural undeveloped state as contrasted to the more structured, landscaped and improved nature of a golf course with its fairways, sand traps, rough and greens created for one purpose: to play the game of golf. However, the enumerated activities may sometimes occur on land that has been developed, such as bird hunting in a corn field or berry picking in a planted berry patch instead of in the woods. But golfing is clearly not the type of activity that is done on land in its natural undeveloped state.

In the recent case of *Wirth v. Ehly*, 93 Wis. 2d 433, 287 N.W.2d 140 (1980), this court held that sec. 29.68, Stats., precluded holding the state or its employees liable for an injury suffered while riding a motorbike in a state-owned fishing area in rural Dane county. An earlier case, *Copeland v. Larson*, 46 Wis. 2d 337, 174 N.W.2d 745 (1970), applied sec. 29.68 to an injury caused by a dive off of a pier into a lake. *See also, Cords v. Anderson,* rehearing, 82 Wis. 2d 321, 262 N.W. 2d 141 (1978) ; *Cords v. Ehly,* 62 Wis. 2d 31, 214 N.W.2d

432 (1974); *Goodson v. Racine,* 61 Wis. 2d 554, 213 N.W.2d 16 (1973). None of the above cases explicitly discussed the scope of "recreational purposes" in the statute.

At oral argument, counsel for the defendant argued that "valuable consideration . . . in excess of $150.00 annually," referred to in sec. 29.68 (5) (c), Stats., meant $150 paid by one individual rather than the total annual amount received by a landowner. We disagree.

The valuable consideration exception was added to sec. 29.68, Stats., by ch. 179, Laws of 1975. At that time, the section stated that "valuable consideration" did not include "payments to landowners either in money or in kind, if the payment does not have a value in excess of $25 annually." This exception was modified by ch. 123, Laws of 1977, to exclude "payments to landowners, either in money or in kind, if the *total payments* do not have an *aggregate value* in excess of $150 annually." (Emphasis added.) This amendment makes clear that it is the aggregate payment received by the landowner for the recreational use of his land which is subject to the $150 limitation rather than the amount paid by the individual user of the land.

In addition to the cause of action based upon common law negligence, plaintiffs also allege that they are entitled to damages from the county, under the Wisconsin safe place statute, sec. 101.11. The trial court and court of appeals held that the safe place statute does not apply to plaintiffs' action because the golf course is not a "place of employment" as defined by sec. 101.01 (2) (a), Stats. 1977,[4] because the county is not engaged in an

---

[4] "101.01   **Definitions.** . . . (2) The following terms as used in ss. 101.01 to 101.25, shall be construed as follows:

"(a) 'Place of employment' includes every place, whether indoors or out or underground and the premises appurtenant thereto

industry, trade or business, and its employees are not employed for direct or indirect gain or profit.

Such a determination is not proper at this stage of the proceedings. Plaintiffs alleged in the complaint that the golf course is a "place of employment." The county offered nothing to refute this allegation. In *Leitner v. Milwaukee County*, 94 Wis. 2d 186, 287 N.W.2d 803 (1980), this court was presented with a similar situation and stated:

"The complaint asserts that the zoo was a place of employment. The trial court rejected this, but in so doing, assumed a fact not in the record, to-wit, that the county did not operate the zoo for profit or gain. While this may in fact be true, the plaintiff was not required at the pleading stage to prove that the zoo was operated for profit or gain. . . .

"[W]hether a city or county is liable under the safe place statute for providing an unsafe place of employment depends upon the facts produced at trial. Because the premises are owned by a county does not, *ipso facto,* mean that they are not a place of employment. A county can, and often does, engage in activities to make a profit. The determination of whether the profit motive is present or absent cannot be made at the motion to dismiss or demurrer stage, especially when the complaint specifically alleged the premises were in place of employment." *Leitner,* 94 Wis. 2d at 190-91.

The cases of *Hoepner v. City of Eau Claire*, 264 Wis 608, 60 N.W.2d 392 (1953), and *Rogers v. Oconomowoc,* 16 Wis. 2d 621, 115 N.W.2d 635 (1964); cited by the

where either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit, but does not include any place where persons are employed in private domestic service which does not involve the use of mechanical power or in farming."

county in support of its contention that the safe place statute does not apply to the golf course, do not affect our determination. *Hoepner,* which held that a municipal baseball field was neither a "public building" nor "place of employment" was decided on a directed verdict after all testimony was taken, providing a factual basis for the "place of employment" determination. *Rogers,* which involved a municipal beach, was before this court on the trial court's overrule of a demurrer. This court held, relying on *Hoepner,* that the beach and seawall was not a place of employment but was a public building. While *Rogers* did not set forth the basis for this conclusion, we are satisfied that, to the extent that it might govern this case, it has been qualified by the later case of *Leitner,* 94 Wis. 2d at 191.

The record at this point is barren of necessary facts upon which a determination as to the applicability of the safe place statute can be made.

In conclusion, we hold that sec. 29.68, Stats., does not bar plaintiffs' action. We interpret "recreational purposes" to only apply to the recreational use of land of the type set forth in the statute and hold that a golf course does not come within these categories. We further hold that the $150 limit set forth in the "valuable consideration" exception contained in sec. 29.68(5)(c), Stats., refers to the aggregate payments received by a landowner for recreational use of the land. Finally, we conclude that the dismissal of plaintiffs' safe place cause of action was premature because the record does not provide a basis for determining whether the golf course is a place of employment under sec 101.01(2)(a). We reverse the decision of the court of appeals which affirmed the trial court's order of dismissal and remand the matter for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded to the trial court for further proceedings not inconsistent with this opinion.